WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emilie Broderick, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>Vincent Deanda,<br><br>                    Defendant. | No. CV-11-1484-PHX-MEA (BSB)<br><br>**ORDER** |

Plaintiffs have filed a motion in limine regarding Defendant's affirmative defenses. (Doc. 118.) Plaintiffs argue that Defendant should not be allowed to directly or indirectly introduce evidence related to Plaintiffs' use or non-use of seatbelts, and that Defendant should not be allowed to assert comparative fault against Plaintiffs Emilie Broderick and Crystal Kuy.[1] (*Id*.) Defendant has filed a response to the motion in limine. (Doc. 128.)

The Court heard argument on this motion at the Final Pretrial Conference on December 19, 2013. (Doc. 132.) As stated on the record at the Final Pretrial Conference, and in the Court's December 23, 2013 Order, the Court granted Plaintiffs' motion in limine, in part, with respect of the issue of seatbelt usage. (Doc. 133.) As set forth below, the Court denies Plaintiffs' motion in limine with respect to the issue of comparative fault.

---

[1] On January 16, 2014, the parties filed a Notice of Partial Settlement (Doc. 138) advising the Court that they have settled Plaintiffs DeHart's and Kuy's claims. The settlement does not affect the Court's ruling on the Plaintiffs' motion in limine.

## I. Factual Background

This matter arises from a two-car collision that occurred in Yuma, Arizona on August 14, 2010.[2] Plaintiffs Emilie Broderick, Nichole DeHart, and Crystal Kuy were passengers in one of the vehicles in the collision, which Defendant Vincent Deanda was driving. Plaintiffs and Defendant were in the same vehicle following a rafting trip on the Colorado River that was organized by members of their church. Plaintiffs were members of a congregation in San Diego, California, and Defendant was a member of a congregation in Yuma, Arizona. Approximately forty people participated in the rafting trip, which lasted four hours. The participants drove to the river at a point where the rafting trip would start, or the "put-in point," and left some vehicles at this point. The participants left other vehicles at the point on the river where the rafting trip would end, or the "take-out point." Following the rafting trip, the Plaintiffs were riding with Defendant from the take-out point back to Yuma when the accident occurred.

Defendant had been drinking alcohol before the accident and later pleaded guilty to, and was convicted of, driving under the influence of alcohol at the time of the accident. Defendant admits he was negligent and that his negligent driving caused the accident. Plaintiff DeHart testified in her deposition that, before the accident, someone named "Jill" told her that Defendant had too much to drink on the rafting trip. Plaintiffs Broderick and Kuy testified in their depositions that they were not aware of Jill's comment. Plaintiffs were injured in the accident. The parties agree that the principal purposes of a trial in this matter are to have the jury determine the amount of Plaintiffs' compensatory damages for their injuries and to have the jury decide whether to award punitive damages.

## II. Procedural Background

Plaintiffs filed their complaint in July 2011. (Doc. 1.) In October 2011, Defendant filed an answer asserting numerous affirmative defenses, including Plaintiffs'

---

[2] The factual background is derived from the parties' Stipulated Statement to the Jury (Doc. 131), Plaintiffs' statement of background facts in their motion in limine, (Doc. 118), and the background facts in the parties' Joint Report to the Court. (Doc. 69.)

- 2 -

alleged comparative fault. (Doc. 8 at ¶ 43.) In November 2011, the parties filed a proposed joint case management plan in which Defendant again asserted a defense of comparative negligence. (Doc. 18 at 2 and 3.) Plaintiffs stated in the joint case management report that they anticipated possibly filing dispositive motions directed at Defendant's affirmative defenses, if such defenses were not later withdrawn. (*Id.* at 4.) In November 2011, the Court issued a Rule 16 Scheduling Order that directed the parties to comply with the Federal Rules of Civil Procedure with respect to disclosure and discovery. (Doc. 19.)

In December 2011, Plaintiffs served discovery requests on Defendant, including requests for admissions and interrogatories directed at Defendant's affirmative defenses. Defendant responded to these discovery requests in January 2012. (Doc. 118, Ex. 1.) Defendant denied the request for admission asking whether he admitted that Plaintiffs were "not at fault for the accident in question." (*Id.*) In response to the interrogatory asking Defendant to state the factual basis of each of his affirmative defenses, Defendant stated that: "[a]ppropriate affirmative defenses have been raised, and discovery has not been completed to substantiate or provide information in response to this interrogatory. This response will be supplemented as discovery continues." (*Id.*) In response to the interrogatory asking Defendant to state all facts supporting his denial of the request for admission regarding Plaintiffs' fault, Defendant stated that one or more of the Plaintiffs failed to use a seatbelt. (*Id.*)

Plaintiffs deposed Defendant in January 2012 and asked about his affirmative defenses, but Defendant was unable to provide information in response to these questions. (Doc. 118, Ex. 2.) At the deposition, the parties discussed that Defendant would file an amended complaint and possibly eliminate some affirmative defenses. (*Id.*) In February 2012, Defendant filed an amended answer and removed some affirmative defenses, but continued to assert Plaintiffs' alleged comparative fault as an affirmative defense. (Doc. 37 at ¶43.)

1    In March 2012, Defendant deposed the Plaintiffs. Plaintiffs' counsel asserts that after the depositions he again asked defense counsel to address the factual basis of Defendant's affirmative defenses. (Doc. 118 at 6.) Plaintiffs' counsel further asserts that defense counsel stated that Defendant would assert only two of his affirmative defenses, the seatbelt defense and comparative fault against Plaintiff DeHart based on her testimony that Jill told her that Defendant had been drinking. (*Id.*)

In November 2012, the parties filed a Joint Report to the Court in which Defendant stated, in part, that he had "raised two separate defenses":

> First, the defense contends that one or more of the Plaintiffs should have known that Mr. Deanda was intoxicated before entering into the Deanda vehicle and should have refused to ride with him. Based on this allegation, the defense contends that one or more of the Plaintiffs should bear some percentage of fault for their injuries.

(Doc. 69 at 2.)

### III. Supplementing Discovery Responses Under Rule 26(e)

Under Rule 26(e)(1), "a party . . . who has responded to an interrogatory . . . must supplement or correct its . . . response: (A) in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Plaintiffs argue that Defendant did not formally or informally supplement his discovery responses to set forth the factual basis for his comparative fault defenses against Plaintiffs and, therefore, should not be permitted to argue that the jury should apply comparative fault to Plaintiffs Broderick and Kuy.[3]

In response, Defendant acknowledges that "specific facts surrounding [his] comparative fault defenses were not formally supplemented in [Defendant's] discovery responses." (Doc. 128 at 2.) Defendant argues, however, that "the facts surrounding

---

[3] As set forth below in Section IV, Plaintiffs do not argue that Defendant should be precluded from asserting a comparative fault defense against Plaintiff DeHart.

- 4 -

1    [Defendant's] comparative fault defenses were known by Plaintiffs Kuy and Broderick, at
2    the time of the accident."  Defendant further argues that based on the Plaintiffs'
3    deposition testimony, the Plaintiffs were aware of the facts supporting Defendant's
4    assertions of comparative fault.  Specifically, Defendant asserts that the Plaintiffs
5    testified in deposition that prior to their arrival for the rafting trip they knew there would
6    be drinking on the trip and, despite this knowledge, they came to the river without cell
7    phones, keys, or their own vehicle, even though they had driven from San Diego to Yuma
8    and had a vehicle available to them.  (*Id.*)  At the Final Pretrial Conference, defense
9    counsel asserted that Plaintiffs also testified that they went to Defendant's home the night
10   before the rafting trip and saw coolers being packed for the trip with beer and vodka.

11   Based upon Defendant's characterization of Plaintiffs' deposition testimony, the
12   Court finds that the facts supporting Defendant's assertion of comparative fault against
13   Plaintiffs Kuy and Broderick, although not stated in a formal supplement to Defendant's
14   discovery responses, were nonetheless "made known to the other parties during the
15   discovery process." *See* Fed. R. Civ. P. 26(e)(1)(A). In addition, Defendant consistently
16   asserted comparative fault as an affirmative defense (Docs. 8, 18, 37, and 69), even after
17   discussions with Plaintiffs' counsel about eliminating certain defenses (Doc. 118 at 6)
18   and filing an amended complaint.  (Docs. 37 and 69.)  Thus, the Court concludes that
19   Defendant asserted Plaintiffs' alleged comparative fault as an affirmative defense and did
20   not withdraw or abandon that defense.

21   Defendant, however, did not supplement his discovery responses to explain the
22   factual basis of his assertions of Plaintiffs' alleged comparative fault.  At the Final
23   Pretrial Conference, Defendant argued that he was not required to explain to Plaintiffs
24   how he intended to use their testimony to support his affirmative defenses.  The Court
25   disagrees.  Because Plaintiffs served requests for admissions and interrogatories that
26   specifically requested the factual basis of Defendant's affirmative defenses, and because
27   Defendant did not object to these requests (Doc. 118, Ex. 1), Defendant was required to
28   set forth the factual basis of his affirmative defenses in response to that discovery.  The

Court concludes that Defendant did not comply with his obligations under Rule 26(e) to supplement his discovery responses. Although the facts supporting Defendant's assertion of comparative fault were "made known to the other parties during the discovery process," Defendant did not provide the additional information requested in Plaintiffs' discovery and state the specific facts supporting his assertions of comparative fault. Therefore, as set forth below, the Court considers whether Defendant's failure to supplement was substantially justified or harmless. *See* Rule 37(c).

**IV.    Sanctions Under Rule 37(c)**

Rule 37(c) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) is a "'self-executing,' 'automatic' sanction 'to provide[] a strong inducement for disclosure of material . . . .'" *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Fed. R. Civ. P. 37, Ad. Comm. Notes (1993 amendments)). Rule 37(c)(1), however, allows the use of information or witnesses that were not timely disclosed if the failure to disclose was substantially justified or harmless, but places "the burden [] on the party facing sanctions to prove harmlessness." *Id.* at 1107 (citing *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001) ("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 26] was either justified or harmless . . . .")).

Defendant does not assert that his failure to supplement his discovery responses was substantially justified, but instead argues that because Plaintiffs testified at their depositions to the facts supporting his assertions of comparative fault, Plaintiffs were fully aware of these facts and his failure to formally supplement his discovery responses was harmless. Plaintiffs assert differing positions on the effect of Defendant's failure to supplement his discovery responses. Plaintiffs Kuy and Broderick argue that they were harmed by Defendant's failure to formally supplement his discovery requests, while Plaintiff DeHart tacitly admits that she was not harmed by the lack of supplementation.

1     Plaintiffs Kuy and Broderick argue that because Defendant failed to supplement
2  his discovery responses, as Rule 26(e)(1) requires, Plaintiffs did not know that he
3  intended to allege comparative fault against them. (Doc. 118 at 6.) These Plaintiffs
4  assert that they are prejudiced by Defendant asserting the "new affirmative defense" that
5  they "engaged in comparative fault by riding in a vehicle driven by an individual who
6  was under the influence." (*Id.* at 9.). In contrast, Plaintiff DeHart does not argue that she
7  did not know that Defendant intended to assert comparative fault against her.

8     Contrary to Plaintiffs' argument, Defendant is not attempting to assert a "new
9  affirmative defense" against Plaintiffs Kuy and Broderick. As set forth above, Defendant
10 consistently asserted Plaintiffs' alleged comparative fault as an affirmative defense.
11 (Docs. 8, 18, 37, and 69.) Furthermore, Defendant did not limit this affirmative defense
12 to Plaintiff DeHart. Instead, in the parties' joint status report, Defendant stated that he
13 "contend[ed] that one or more of the Plaintiffs should have known that Mr. Deanda was
14 intoxicated before entering into the Deanda vehicle and should have refused to ride with
15 him." Therefore, Plaintiffs did not learn of this affirmative defense "for the first time"
16 while preparing the proposed joint final pretrial order (Doc. 118 at 6), and they were not
17 harmed by the assertion of a "new affirmative defense."

18    Plaintiffs Kuy and Broderick also argue that if they had known that Defendant
19 intended to argue comparative fault against them, they could have "conducted further
20 investigation of the circumstances surrounding the [r]iver trip and the accident."
21 (Doc. 118 at 10.) They assert that "there were around 40 people on the river trip . . . [and
22 had Plaintiffs] known that this defense would be directed at Ms. Broderick and/or Ms.
23 Kuy, [they] could have located and interviewed other participants on the river trip and
24 inquired about their observations of Mr. Deanda." (*Id.*) They further assert that "[i]t is
25 highly likely that [the testimony of other participants of the raft trip] would be supportive
26 of that of Ms. Broderick and Ms. Kuy: that they did not realize that Mr. Deanda was
27 intoxicated." (*Id.*) At the final pretrial conference, Plaintiffs also argued that they could
28 have attempted to defeat this affirmative defense with expert testimony about the signs of

intoxication and whether Plaintiffs could have determined that Defendant was intoxicated.

As an initial matter, the Court rejects as speculation Plaintiffs' argument that it was "highly likely" that they would have identified witnesses who supported their assertions that they did not realize Defendant was intoxicated. Indeed, the only other participant identified as commenting on Defendant's alcohol consumption and intoxication was "Jill" and she told Plaintiff DeHart that Defendant had too much to drink on the rafting trip. Although Plaintiffs may have found witnesses who would testify that they did not realize Defendant was drinking, it is equally likely that they would have found witnesses who would testify that they did know Defendant was drinking on the trip.

In addition, Plaintiffs attempt to distinguish the facts regarding Plaintiff DeHart's knowledge that Defendant may have been drinking on the rafting trip (based on Jill's comment) from Plaintiffs Kuy's and Broderick's knowledge of whether Defendant had been drinking (who state they were unaware of Jill's comment). However, Plaintiff DeHart has not stipulated that she knew that Defendant was intoxicated or admitted any fault. Instead, while she testified in deposition that "Jill" said Defendant had too much to drink, it appears she intends to argue at trial that she was not aware that he was intoxicated or that his ability to drive was impaired. Plaintiffs Kuy and Broderick also intend to argue at trial that they were not aware of Defendant's intoxication. Therefore, Plaintiffs DeHart, Kuy, and Broderick had the same incentives to attempt to identify witnesses to testify that Defendant did not appear intoxicated and to offer expert testimony about the signs of intoxication and whether they should have known Defendant was intoxicated.

Plaintiffs attempt to distinguish their decisions and strategies regarding discovery by arguing there was no further discovery counsel could have conducted to respond to Plaintiff DeHart's deposition testimony that "Jill" told her Defendant was drinking before the accident, but that they would have conducted further discovery if they had known

- 8 -

1 Defendant was alleging comparative fault against Plaintiffs Kuy and Broderick. This
2 argument fails, however, because all of the Plaintiffs deny that they knew Defendant was
3 intoxicated and all had incentives to identify fact or expert witnesses to support their
4 assertions. Therefore, the Court concludes that Plaintiffs' case development and
5 investigation strategies were not affected by Defendant's failure to supplement his
6 discovery responses to explain the facts supporting his assertions of comparative fault.
7 Therefore, Defendant's failure to supplement his discovery responses was harmless.

8 Finally, Plaintiffs Kuy and Broderick assert that if they had been aware that
9 Defendant intended to assert their alleged comparative fault as a defense, they could have
10 filed a motion for partial summary judgment on this issue. (Doc. 118 at 10.) However,
11 under the Arizona Constitution "[t]he defense of contributory negligence or of
12 assumption of the risk shall, in all cases whatsoever, be a question of fact and shall, at all
13 times, be left to the jury." ARIZ. CONST., art. XVIII, § 5; *see also Markowitz v. Ariz.*
14 *Parks Bd.*, 706 P.2d 364, 371 (Ariz. 1985) ("Questions of contributory negligence are
15 always for the jury under our constitution, and are not a proper subject for summary
16 adjudication.") (citations omitted), *superseded by statute on other grounds*, Ariz. Rev.
17 Stat. § 33-1551; *cf. Davis v. Waters,* 436 P.2d 906 (Ariz. 1968) (plaintiff's denial that she
18 knew defendant was intoxicated did not deprive defendant of defense of assumption of
19 the risk). Therefore, even if Plaintiffs did not file a motion for partial summary judgment
20 on comparative fault because Defendant did not supplement his discovery responses on
21 that issue, Plaintiffs were not harmed by not filing a motion on this issue.

22 **V.    Conclusion**

23 Although the Court finds that Defendant failed to supplement his discovery
24 responses as Rule 26(e) requires, the Court also finds that Defendant's failure to
25 supplement was harmless. Plaintiffs knew that Defendant intended to assert comparative
26 fault as an affirmative defense. Plaintiffs also knew the facts supporting Defendant's
27 assertion of that defense. Their decisions regarding discovery and motions were not
28 adversely affected by Defendant's failure to supplement his discovery responses. The

1  Court will not preclude Defendant from asserting comparative fault against Plaintiffs Kuy
2  and Broderick.
3       Accordingly,
4       **IT IS ORDERED** that Plaintiffs' Motion in Limine (Doc. 118) is **GRANTED**, in
5  part, with respect to the Plaintiffs' use or non-use of seat belts, as stated on the record at
6  the Final Pretrial Conference and set forth in the Court's December 23, 1013 Order.
7  (Doc. 133.)
8       **IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine (Doc. 118) is
9  **DENIED**, in part, with respect to the issue of Plaintiffs' alleged comparative fault.
10      **IT IS FURTHER ORDERED** that the parties will submit revised jury
11 instructions to the Court at bade_chambers@azd.uscourts.gov to reflect the effect of this
12 Order.
13      Dated this 17th day of January, 2014.

_____
Bridget S. Bade
United States Magistrate Judge